**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cruz Young, | No. CV-08-01325-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Columbia Sussex Corp., doing business as the Phoenix Airport Marriott Hotel, | |
| Defendant. | |

Plaintiff Cruz Young brings this employment discrimination and retaliation action against defendant Columbia Sussex Corp. The court has before it defendant's motion for summary judgment (doc. 33), plaintiff's response (doc. 39), and defendant's reply (doc. 41). We also have before us plaintiff's motion to strike defendant's reply (doc. 42) and defendant's response (doc. 43).

As an initial matter, we deny plaintiff's motion to strike (doc. 42). Plaintiff does not contend that she was prejudiced by defendant's late reply nor does she respond to defendant's representation that she agreed to stipulate to an extension. We accept defendant's assurance that it will not occur again.

**I. Background**

Plaintiff worked as a banquet server at defendant's Phoenix Airport Marriott Hotel from April 1999 until August 2008. In 2006 or early 2007, she began to experience problems

with Jose Herrera, another banquet server. According to plaintiff, Herrera rubbed his crotch up against her, told her that he would leave his wife for her, and grabbed her face to kiss her after having been slapped during a prior attempt. Plaintiff, who is from the Dominican Republic and partly of African descent, also alleges that Herrera referred to her as a "fucking puta" and to her black boyfriend Juan Jones as a "fucking nigger." Young Deposition at 138. Plaintiff also recounts that Herrera joked, "They got your ass so big" in connection with her relationship with Jones in front of other employees. Id. In April or May 2007, plaintiff says that she complained to Banquet Manager Judy Egelhoff about Herrera's attempts to kiss her and his "talking about putting his head and his hand inside of my vagina and I would still be big because butt, big butt, you know." Id. at 214-15. Co-workers Ernesto Hernandez and Ricardo Vila recall that plaintiff frequently cried at work. Vila also says that he witnessed Herrera make disparaging remarks to plaintiff and that, at the time, he thought Herrera "was wooing her or courting her." Vila Deposition at 11. In October 2007, plaintiff claims that Herrera forcefully dragged her from a kitchen toward a garbage area during a heated exchange after she had been asked by a new employee whether she liked Herrera. After plaintiff complained to Doug Shaw, Egelhoff's replacement as Banquet Manager, Herrera was suspended and then terminated in December 2007.

Plaintiff failed to receive her November 23, 2007 paycheck. Plaintiff filed an EEOC complaint on November 30, 2007, alleging discrimination on the basis of national origin and sex due to Herrera's behavior and retaliation due to the missing paycheck. According to plaintiff, Food and Beverage Manager Raul Pena subsequently told co-workers to stay away from her because she might accuse them of sexual harassment, slammed doors in her face five to ten times, referred to her as "that garbage," and told her to "go back to the Dominican Republic." Young Deposition at 235-36. On May 2, 2008, plaintiff filed a second EEOC complaint alleging retaliation by Pena and a decrease in hours. Plaintiff wrote General Manager Jeff Bhatti a letter complaining about Pena in late July 2008. And she resigned the following month after Pena allegedly called her a "bitch" the day after management had conducted an investigation. Id. at 254.

1    Plaintiff then filed this action claiming a hostile work environment due to racial and sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and due to racial harassment under 42 U.S.C. § 1981. She also seeks relief for retaliation under both Title VII and § 1981.

Defendant now moves for summary judgment on plaintiff's claims. It contends that plaintiff's hostile work environment claims fail because she has shown neither that the alleged harassment was because of sex nor that it was severe or pervasive enough to be actionable. Defendant also asserts that its response to plaintiff's complaints was adequate. Finally, it challenges the retaliation claims as time barred and for failure to show an adverse action or a causal connection between plaintiff's reporting activities and Pena's conduct.[1] Plaintiff maintains that defendant is not entitled to judgment as a matter of law on any claim.

## II. Title VII Hostile Work Environment

Title VII prohibits employers from negligently responding to sexual or racial harassment by co-workers when the conduct creates a hostile work environment. See Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir. 1998). In order to prevail, plaintiff must show that she was subjected to unwelcome verbal or physical conduct of a racial or sexual nature, that the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and that defendant knew or should have known of the harassment but did not take adequate steps to address it. See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1119 (9th Cir. 2004). The workplace must be both subjectively hostile to plaintiff and objectively hostile to a reasonable person with plaintiff's characteristics. Id. at 1113.

---

[1] Defendant also moves for summary judgment on claims for disparate treatment based on similarly situated persons being treated more favorably and for discrimination based on national origin. Insofar as plaintiff is not bringing a disparate treatment claim beyond discriminatory and retaliatory harassment, we do not consider the former. Because plaintiff is not bringing a claim for discrimination based on national origin, we do not consider the latter.

1    Defendant first contends that, even when viewed in a light most favorable to plaintiff,
2    Herrera's alleged conduct resulted from a personal dispute and was not because of sex.
3    Defendant excludes the sexually-explicit comments concerning plaintiff and Jones and the
4    physical altercation in October 2007 as non-sexual, fails to mention Herrera's offers to leave
5    his wife, and suggests that the kissing attempts and the body rubbing are insufficient to
6    amount to sexual harassment. Herrera's motive for arguing with and dragging plaintiff in
7    October 2007 presents a factual question. In any event, the record clearly supports an
8    inference that Herrera harassed plaintiff because of sex and not because of a personal
9    disagreement. Defendant's position is without merit.

10    Next, defendant claims that Herrera's behavior was not sufficiently severe or
11    pervasive to violate Title VII. The existence of a hostile work environment is determined by
12    looking at all of the circumstances, including the frequency of the discriminatory conduct,
13    its severity, whether it is physically threatening or humiliating or a mere offensive utterance,
14    and whether it unreasonably interferes with an employee's work performance. Harris v.
15    Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993). "The required showing of
16    severity or seriousness of the harassing conduct varies inversely with the pervasiveness or
17    frequency of the conduct." Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991). Herrera's
18    harassment allegedly continued unabated for the better part of a year, if not longer. It
19    apparently took a variety of forms, including physically grabbing plaintiff to kiss her and
20    dragging her out of a room. The alleged derogatory comments concerning plaintiff's body
21    and the racial epithets used in reference to Jones are extremely offensive. And plaintiff's
22    frequent crying at work suggests that the harassment interfered with her work even if her
23    performance did not obviously suffer. A reasonable trier of fact could find that Herrera's
24    conduct was severe or pervasive enough to create an abusive environment both for plaintiff
25    and for a reasonable person with her characteristics.

26    Finally, defendant maintains that its response to plaintiff's complaint in October 2007
27    was adequate. Although defendant at first asserts an affirmative defense reserved for
28    determining vicarious liability for supervisory harassment, it properly frames the issue as

negligence in its reply. See Swinton v. Potomac Corp., 270 F.3d 794, 803-04 (9th Cir. 2001) (distinguishing supervisor harassment standards from those for co-worker harassment). Notice of harassment triggers an employer's duty to take prompt corrective action reasonably calculated to end the harassment. Swenson v. Potter, 271 F.3d 1184, 1192 (9th Cir. 2001). When defendant knew about Herrera's conduct and whether it responded effectively cannot be resolved on summary judgment because defendant fails to account for plaintiff's alleged complaint to Egelhoff in April or May 2007. Defendant's motion for summary judgment is denied with respect to plaintiff's Title VII hostile work environment claim.

### III. Section 1981 Hostile Work Environment

The Civil Rights Act of 1866, 42 U.S.C. § 1981, also makes it unlawful for employers to subject their employees to a hostile work environment due to racial harassment. See Manatt v. Bank of America, N.A., 339 F.3d 792, 797 (9th Cir. 2003). The legal standards applied to § 1981 claims are borrowed from the Title VII context. Id. at 798. However, the scope of § 1981 is limited to racial discrimination. Id. Thus, the analysis of plaintiff's hostile work environment claim under § 1981 is narrower, but the result is the same.

As with plaintiff's Title VII claim, defendant contends that plaintiff has not shown racial harassment severe or pervasive enough to create an abusive work environment. Viewed both subjectively and objectively, Herrera's alleged comments about areas of plaintiff's body based on her interracial relationship with Jones are repulsive. And the racial epithet allegedly used in repeated reference to Jones is "perhaps the most offensive and inflammatory racial slur in English." Swinton, 270 F.3d at 817 (citation omitted). Whether plaintiff suffered severe or pervasive racial harassment in the workplace is genuinely at issue. As above, the adequacy of defendant's response to plaintiff's complaints is also an open question. Therefore, defendant is not entitled to summary judgment on plaintiff's § 1981 hostile work environment claim.

### IV. Title VII Retaliation

Employers are prohibited from discriminating against employees because they have opposed Title VII violations or because they have participated in investigations or

proceedings under Title VII. 42 U.S.C. § 2000e-3(a). To make out a retaliation claim, plaintiff must show that she engaged in protected activity, defendant subjected her to a material adverse action, and a causal link exists between the protected activity and the action. See Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415 (2006). The anti-retaliation provision of Title VII is broader than the anti-discrimination provision and covers actions that are likely to dissuade a reasonable employee from making or supporting a charge of discrimination. White, 548, U.S. at 67-68, 125 S.Ct. at 2414-15. Retaliatory harassment is cognizable as a retaliation claim in the Ninth Circuit. See Ray, 217 F.3d at 1245 (applying hostile work environment standard to retaliatory harassment pre-White).

Defendant primarily contends that a retaliation claim based on Pena's conduct is time barred because the complaint does not cover such conduct in sufficient detail and plaintiff did not amend her complaint within ninety days of receiving a right-to-sue letter on her second EEOC charge.[2] Defendant relies on Gooding v. Warner-Lambert Co., 744 F.2d 354 (3d Cir. 1984), where the Third Circuit held that it was error to dismiss a well-pled retaliation claim for lack of jurisdiction because of a failure to allege a right-to-sue letter received after the complaint was filed. Cf. Wrighten v. Metro. Hosps., Inc., 726 F.2d 1346, 1351 (9th Cir. 1984) (finding no jurisdictional defect where right-to-sue letter issued after a complaint was filed). Defendant's position is that, unlike the complaint in Gooding, which set out the factual basis for claims of both discrimination and retaliation, plaintiff's complaint does not fairly cover Pena's alleged harassment. Plaintiff's contention, based on Title VII administrative exhaustion doctrine, is non-responsive. The question is not whether she could have brought a complaint covering Pena's actions but whether she did. We conclude that she did. While plaintiff's complaint is thin on factual allegations, it was sufficient to give

---

[2] Plaintiff filed this action on July 18, 2008, within ninety days of receiving a right-to-sue letter for her first charge issued on April 30, 2008. A right-to-sue letter was apparently issued for her second charge on July 30, 2008.

- 6 -

defendant fair notice of a retaliation claim based on Pena's conduct.[3] Therefore, plaintiff's retaliatory harassment claim is properly before us and is not time barred.

Defendant also contends that plaintiff's claim fails because she has not shown an adverse action. We agree. Title VII does not set forth a general civility code for the workplace. White, 548 U.S. at 68, 126 S.Ct. at 2415 (citation omitted). The anti-retaliation provision only covers material adversity and not "petty slights or minor annoyances." Id. at 68, 126 S.Ct. at 2415. Thus, it "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67, 126 S.Ct. at 2414. Pena allegedly made three offensive remarks about plaintiff over the course of approximately eight months: "go back to the Dominican Republic," "that garbage," and "bitch." PSTOF ¶¶ 71, 72, 81. He also allegedly told co-workers to not get close to plaintiff because she might accuse them of sexual harassment. Plaintiff concedes that "he appeared to be joking." Id. ¶ 12. Plaintiff also claims that Pena slammed doors in her face five to ten times. To be sure, the behavior described is inappropriate and it should not be condoned in any workplace. However, viewed in a light most favorable to plaintiff and taken in context, it is not actionable retaliation under Title VII. See White, 548 U.S. at 69, 126 S.Ct. at 2415 ("Context matters."). A reasonable trier of fact could not find that Pena's alleged harassment would likely dissuade a reasonable employee from making or supporting a charge of discrimination.

Because plaintiff has not shown a material adverse action, we do not reach defendant's last contention that plaintiff has not shown the requisite causal link between protected activity and an adverse action. Plaintiff also proposes a constructive discharge theory based on the same allegations. Obviously, conduct that could not constitute a material adverse action under the circumstances also could not support the necessary finding that a

---

[3] Defendant also relies on Henry v. Gulf Coast Mosquito Control Commission, 645 F. Supp. 1447 (S.D. Miss. 1986), where the court distinguished Gooding because the complaint at issue did not sufficiently plead a retaliation claim, and, even if sufficient, plaintiff's counsel misled the defendant by restricting the scope of the plaintiff's deposition to discrimination. Here, defendant throughly deposed plaintiff on her retaliation allegations concerning Pena.

reasonable employee in plaintiff's position would have felt forced to quit. See Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994). Therefore, we grant defendant's motion for summary judgment with respect to plaintiff's Title VII retaliation claim.

### V. Section 1981 Retaliation

Retaliation against employees for complaining about a racially hostile work environment is similarly prohibited under § 1981. See CBOCS W., Inc. v. Humphries, 128 S.Ct. 1951, 1961 (2008). Just as above, plaintiff cannot proceed with her § 1981 retaliation claim because she has not shown a material adverse action either based on Pena's conduct alone or based on a constructive discharge theory supported by Pena's conduct. Defendant's motion for summary judgment is also granted with respect to plaintiff's § 1981 retaliation claim.

**IT IS THEREFORE ORDERED DENYING** plaintiff's motion to strike (doc. 42).

**IT IS FURTHER ORDERED DENYING IN PART** and **GRANTING IN PART** defendant's motion for summary judgment (doc. 33). Plaintiff's Title VII and § 1981 hostile work environment claims continue. Plaintiff's Title VII and § 1981 retaliation claims do not.

DATED this 15th day of October, 2009.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge